IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

**INTIMATE FASHIONS, INC.**,

Plaintiff - Counterdefendant

**v.**

**EL TELAR, INC.,  et al**,

Defendant - Counter plaintiff

**CIVIL NO. 06-1204 (JAG/CVR)**

## OPINION AND ORDER

## INTRODUCTION

This civil action for breach of contract and collection of money under the terms of a lease agreement of an industrial building was commenced by a complaint filed by Intimate Fashions, Inc. ("Intimate Fashions") on March 3, 2006,  against El Telar, Inc. ("El Telar"), its insurer United Surety & Indemnity Company ("United Surety") and unknown insurers identified in the Complaint as XYZ Insurance Companies. **(Docket No. 1)**. The Complaint was not amended to substitute the latter. The jurisdiction of the district court is predicated on the diversity of citizenship of the parties pursuant to the provisions of Title 28, <u>United States Code</u>, Section 1332 and was not disputed.

## PROCEDURAL BACKGROUND

On April 26, 2006, United Surety filed its Answer to the Complaint **(Docket No. 9).**[1] In its Answer to the Complaint filed on the same date, El Telar denied generally  the allegations of the Complaint.  **(Docket No. 10).**  It therein included a Counterclaim

---

[1]   A settlement agreement was reached by Intimate Fashions and United Surety prior to trial in consideration of the payment by United Surety of the amount of $13,000, and on November 24, 2008, a Motion for Partial Voluntary Dismissal with Prejudice was filed by Intimate Fashions **(Docket No. 132)**. Partial Judgment dismissing with prejudice the claims between these parties was entered on November 26, 2006 **(Docket No. 134)**.

against Intimate Fashions wherein it alleged, in essence, that Intimate Fashions breached the terms of the lease agreement which is the basis of the action in that the leased premises did not meet the applicable standards for the intended use and that Intimate Fashions failed to make certain required repairs, as a result of which El Telar was forced to vacate the premises. El Telar claimed damages in its Counterclaim in an amount not less than $365,400.00. Timely requests for trial by jury were made by both Intimate Fashions and El Telar.

On February 20, 2009, Intimate Fashions and El Telar filed a Joint Motion informing their decision to waive the right to jury trial, their consent to trial before a United States Magistrate Judge and requesting the continuance of the scheduled trial. **(Docket No. 140)**. The request for continuance was denied. A Joint Motion in Compliance with the order of the Court was then filed on February 26, 2009. **(Docket No. 144)**. By order entered on February 27, 2009, the case was referred to this United States Magistrate Judge for full disposition, including the holding of the non-jury trial. **(Docket No. 146)**. Following a Pretrial Conference held on March 3, 3009, the non-jury trial was reset for April 27, 2009, and the parties were granted a term within which to submit an Amended Proposed Pretrial Order to address certain additional stipulations of fact to further limit the issues for trial. **(Docket No. 148)**.

At this stage of the proceedings, at the request of counsel for El Telar, with the consent of counsel for Intimate Fashions, a telephone conference was held on April 23, 2009. Attorney Ricardo Pizarro informed therein his decision to withdraw the

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No.  3

representation of defendant El Telar due to a lack of communication with his client and the unavailability of the witnesses necessary for the defense of the case, notwithstanding having notified El Telar with adequate time the trial date, as well as the need to make the witnesses available. **(Docket No. 156)**.  The court reserved its ruling until such time as the corresponding motion with the grounds in support was filed by attorney Pizarro.

On April 23, 2009, a Motion to Withdraw  El Telar's representation was filed by attorney Pizarro. **(Docket No. 157)**.  By order entered on even date, the motion was granted, the withdrawal was allowed and El Telar was granted twenty (20) calendar days within which to appear through new counsel, under admonishment of imposition of sanctions, including the entry of default as to the complaint, the dismissal of the counterclaim, the striking of affirmative defenses and/or the imposition of monetary sanctions, among others.  **(Docket No. 158)**,.  The bench trial scheduled for April 27, 2009, was vacated and attorney Pizarro was ordered to file a Notice of Compliance by May 15, 2009. The Notice of Compliance was filed on April 27, 2009.  **(Docket No. 161).** In the notice, attorney Pizarro certified that on April 23, 2009, copy of the Court's order was sent to defendant counter-plaintiff El Telar to the two (2) e-mail addresses of Mr. Isaac Roffe-Attías included in the motion to withdraw, and that on April 27, 2009, copy of the order was also sent through certified mail to El Telar's address at P.O. Box 362469, San Juan, P.R. 00936-2469.

El Telar has failed to appear through new counsel within the time granted and has not requested relief from the order entered. On May 20, 2009, Intimate Fashions moved

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No.  4

for the entry of the default of El Telar.  **(Docket No. 163).**  By order entered on May 29, 2009, the motion was granted and the default hearing on damages was set for July 10, 2009. **(Docket No. 165).**  Subsequently, on June 4, 2009, Intimate Fashions moved to dismiss the Counterclaim.  **(Docket No. 166).**  Both the order for entry of default, as well as the order on Motion for Miscellaneous Relief were notified by the Clerk's Office to El Telar and Mr. Isaac Roffe-Attias by mail. **(Docket Nos. 165, 168).**  None of these notifications appear on the docket as having been returned by the United States Postal Service for failure to deliver.  No response or opposition was filed by El Telar.

By Opinion and Order entered on June 29, 2009, Intimate Fashions' unopposed Motion to Dismiss Counterclaim was granted. **(Docket No. 169)**.  The Counterclaim was dismissed with prejudice, without the imposition of costs and attorneys fees, pursuant to the provisions of Rule 41 (b) of the Federal Rules of Civil Procedure and the law as set by the Court of Appeals for the First Circuit in  Farm Construction Services v. Fudge, 831 F.2d 18, 20 (1ˢᵗ Cir, 1987); Brockton Savings Bank v. Peat, Marwick, Mitchell & Co, 771 F.2d 5, 12 (1ˢᵗ Cir. 1985); Damiani v. Rhode Island Hospital, 704 F.2d 12, 15-16 (1ˢᵗ Cir. 1983);  and Asociación de Empleados v. Rodríguez Morales, 538 F.2d 915, 917 (1ˢᵗ  Cir. 1976), in the exercise of our discretion given the particular facts and circumstances present in this case.

The non jury trial on default of the above captioned cause on the damages, pursuant to the provisions of Rule 55 (b)(2)(B) of the Federal Rules of Civil Procedure, was held as scheduled on July 10, 2009, before the undersigned United States Magistrate Judge. Present were plaintiff Intimate Fashions, through its President Mr. Benjamin Segan, and

represented by its counsel of record Eugene F. Hestres Vélez, Esq. and Eugene F. Hestres

Rodríguez, Esq.  Defendant El Telar failed to appear either *pro se* or through new counsel,

although notified and aware of the trial setting.  Prior to the trial, and upon the Court's

inquiry, counsel for Intimate Fashions informed he received a telephone call prior to the

trial from attorney Ramón Mellado, a member of the Federal Bar, indicating his client El

Telar had informed him of the hearing but a formal appearance would not be entered nor

would El Telar be present at the hearing.

      After being duly sworn, evidence was presented by Intimate Fashions by way of the

testimony of its President, Mr. Benjamin Segan, as well as ample documentary evidence in

support of the damages claimed, which evidence was received and duly marked. **Exhibits**

**1 thru 19.** After a careful examination of the documentary evidence, the testimony

presented under an assessment of credibility, the provisions of Rule 52 of the Federal Rules

of Civil Procedure and the applicable provisions of the Federal Rules of Evidence and the

Puerto Rico Rules of Evidence, the Court makes the following

**FINDINGS OF FACT**:

      1.    At all times material to this action, Intimate Fashions was a corporation

organized and existing under and by virtue of the laws of the Commonwealth of Puerto

Rico, and was the owner of an industrial building in the Municipality of Las Piedras,

Commonwealth of Puerto Rico. *Complaint ¶2.1; Answer to the Complaint.*

      2.    At all times material to this action, El Telar was a corporation organized and

existing under and by virtue of the laws of the Commonwealth of Puerto Rico, and was

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 6

engaged in business in the Commonwealth of Puerto Rico. *Complaint ¶2.2; Answer to the*
*Complaint.*

    *3.*    At all times material, United Surety was a surety company that had issued
Bond No. 0391000 (hereinafter the "Lease Bond") guaranteeing the payment of rent by El
Telar up to the amount of $15,000.00 regarding the premises leased from Intimate
Fashions in the aforementioned industrial building. *Complaint ¶3.1; Answer to the*
*Complaint.*

    *4.*    On June 29, 2000, Intimate Fashions, as landlord, and El Telar, as tenant,
entered into a lease agreement (the "First Lease Agreement") effective as of July 1, 2000,
for the lease of the industrial building owned by Intimate Fashions located in the
Municipality of Las Piedras. Under the terms and conditions of the First Lease Agreement,
El Telar was responsible for the payment of insurance and property taxes during the term
of the lease. **[Exhibit 1]**.

    5.    El Telar defaulted under the First Lease Agreement, and invoking its
provisions, Intimate Fashions exercised the option to convert the term lease to a month to
month lease. El Telar continued to occupy the leased premises on such basis. **[Exhibits 2
& 3]**

    6.    By letter dated May 16, 2003, Intimate Fashions notified El Telar it did not
want to perpetuate the existing situation and notified its interest of entering into a new
lease for a three year term. **[Exhibit 4]**.  By letter dated July 17, 2003, El Telar was put on

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 7

notice that, unless a lease agreement was executed by a date certain, it had to vacate the premises. **[Exhibit 5]**.

7.      After some negotiations, the parties reached certain agreements for the lease of the industrial building under a three year term, effective as of July 2003, and with a yearly rent as follows: $11,027.44 for Year 1, $11,358.26 for Year 2 and $11,669.00 for Year 3. **[Exhibits 8 and 8-A]**.

8.      On or about September 8, 2003, effective as of July 1, 2003, El Telar executed a Lease Agreement (the "Second Lease Agreement") with Intimate Fashions, for the lease of the industrial building owned by Intimate Fashions. **[Exhibits 9 and 10].**   Under the terms of the Second Lease Agreement, El Telar agreed and became obligated to, among other things, pay the agreed to rent until the termination of the Agreement on June 30, 2006, pay 100% of the gross amount of property taxes assessed on the leased premises, and pay to the landlord 100% of the cost of insuring the building against fire, hurricane, earthquake and such other risks as the landlord may reasonably decide to insure and the cost of public liability insurance covering the common areas of the building, all these charges to be considered additional rent. **[Exhibits 9 and 10]**.

9.      As  determined above, United Surety issued its Lease Bond No. 0391000, in the amount of US$15,000.00, in favor of Intimate Fashions affording coverage for the contractual obligations of El Telar under the Second Lease Agreement. **Complaint, ¶ 2.3**.

10.      On January 1, 2005, Intimate Fashions received defendant El Telar's last rent payment under the Second Lease Agreement, although El Telar continued to occupy the

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No.  8

building until on or about February 28, 2005, when the property was vacated before the agreed termination date of the Second Lease Agreement and without the consent or authorization of Intimate Fashions.

11.     El Telar did not pay rent for the last month it occupied the leased property.

12.     From the time El Telar vacated the building until June 21, 2005, when the property was sold, Intimate Fashions made attempts to lease the building, which efforts were unsuccessful.  **[Exhibit 17]**.

13.     El Telar was responsible for the payment of the monthly rent under the terms of the Second Lease Agreement until its expiration date, which in this case was reduced by reason of the sale of the building.  Thus, El Telar is liable for the base rent at the rate of $11,358.26 per month as per the terms of the Second Lease Agreement from February 1, 2005, up to and including June 30, 2005, while the leased property remained vacant, for a total principal amount of $56,791.30 for this item.

14.     During the month of July, 2003, Intimate Fashions received Invoice No. 58238 in the amount of $5,470.00 Carlos M. Benítez, Inc. for the commercial property insurance coverage over the leased premises for the term beginning on July 1, 2003 and expiring on July 1, 2004. **[Exhibit 11]**. This invoice was paid by Intimate Fashions, referred to El Telar and the amount was reimbursed by El Telar as required by the Second Lease Agreement.

15.     During the month of June, 2004, Intimate Fashions received from Carlos M. Benítez, Inc. the Invoice No. 95437 in the amount of $5,470.00 for the commercial property

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 9

insurance coverage  over the leased premises for the term beginning on July 1, 2004 and

expiring on July 1, 2005. **[Exhibit 12]**. This invoice was also paid by Intimate Fashions and

referred to El Telar but the amount of this invoice has not been reimbursed by El Telar as

required by the Second Lease Agreement although duly demanded.

16.    On March 3, 2005, the Commonwealth of Puerto Rico Municipal Tax

Collection Center ("CRIM") issued a series of Notifications and Demands for Payment of

Real Property Tax in connection with the leased industrial building in question.  **[Exhibit**

**13].** These notices resulted from the fact that El Telar was not entitled to tax exemption as

the previous tenant and therefore upon the lease of the premises by El Telar real property

taxes were assessed by the CRIM, the payment of which was El Telar's responsibility under

the Second Lease Agreement.

17.    On April 28, 2005, a Statement of Account was issued by the CRIM setting

forth all of the outstanding amounts for property taxes in connection with the building.

**[Exhibit 14].** The Statement of Account included certain items for the account of Intimate

Fashions which were not charged to El Telar and are not the subject of this action.

18.    According to the uncontested testimony of Intimate Fashions's president, the

statement was sent to El Telar to the attention of Mr. Roffe but he never contacted plaintiff

and El Telar never paid the property taxes as required by the Second Lease Agreement.

19.    The outstanding property taxes were paid by Intimate Fashions through the

services of Property Tax Advisors, Inc., which by letter dated May 20, 2005, confirmed to

Intimate Fashions' president that the check issued by Intimate Fashions was properly

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 10

applied by the CRIM and that a debt certificate was issued with a $0.00 balance as evidence thereof. **[Exhibit 15]**. In fact, on May 17, 2005, the CRIM issued a Statement of Account regarding the property taxes owed by Intimate for the previously leased premises showing a zero balance. **[Exhibit 16]**.

20.     On May 18, 2005, Intimate Fashions's president reported to Carlos Benítez (insurance agency) that the last rent payment received from El Telar was the payment corresponding to the month of January, 2005. **[Exhibit 18]**.

21.     By letter dated August 12, 2005, the attorneys for Intimate Fashions submitted a demand to Mr. Isaac Roffe requesting payment for the amounts indebted to Intimate Fashions, including the following: **(a)** US$67,254.58 for property taxes; **(b)** US$5,470.00 for the installment of the insurance policy with National Insurance Company due since July 7, 2004; and **(c)** the outstanding rent payment for the leased premises.

22.     In connection with the partial settlement agreement entered into with United Surety, Intimate Fashions received the amount of $13,000.00 which amount must be deducted from the total amount owed by El Telar for the rent, thus reducing the indebtedness from $56,791.30 to $43,791.30, which amount is outstanding since July, 2005.[2]

23.     El Telar is also responsible for the reimbursement of the principal amount of $5,470.00 which amount is outstanding since July 7, 2005, for the insurance premiums paid by Intimate Fashions.

---

[2]  Monthly rent at the rate of $11,358.26 for Year 2 of the Second Lease Agreement computed from the month of February, 2005 thru June 2005 = $56,791.30 less the amount of $13,000 received in partial settlement from United Surety.

24.     El Telar is further indebted to Intimate Fashions in the principal amount of $67,254.58 for the property taxes paid by Intimate Fashions corresponding to the term during which El telar occupied the building, as provided for in the Second Lease Agreement.

25.     All of the aforementioned amounts are due and payable and have not been paid by El Telar although payment thereof has been duly demanded by Intimate Fashions.

## CONCLUSIONS OF LAW

Defendant El Telar's actions constitute a breach of contract as per the applicable doctrine and case law.   Pursuant to the provisions of Article 1042 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2992, "[O]bligations are created by law, by contracts, by quasicontracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." [Emphasis supplied].   "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."   Article 1044 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2994.

A contract exists from the moment one or more persons consent  to bind himself or themselves, with regards to another or others, to give something or to render some service. Article 1206 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3371.   Thus, it follows that the validity and fulfilment of contracts cannot be left to the will of one of the contracting parties. Article 1208 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3373.  Where one of the parties expects to be benefitted by a contract, he is bound to abide by the terms thereof in all particulars. *Colberg v. Trigo*, 16 D.P.R. 696 (1910).

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 12

Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law. Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375.

Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist. Article 1230 of the Puerto Rico Civil Code, 31 L.P.R.A § 3451. If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, as in the case at bar, the literal sense of its stipulations shall be observed. Article 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3471.

Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018, provides that:

> Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby.

In its pertinent part, Article 1059 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3023, states that "indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize...". "The losses and damages of which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfilment." Article 1060 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3024.

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No.  13

On the other hand, Article 1061 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3025, provides that "[S]hould the obligation consist in the payment of a sum of money, and the debtor should be in default, the indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest."

There is no dispute as to the fact El Telar became obligated by the clear terms and provisions of the Second Lease Agreement for the payment of the agreed to rent until the expiration of the lease, the payment of the real property taxes assessed over the leased property as invoiced by the CRIM, pertaining to the term during which the leased property was occupied by said defendant, and the reimbursement of the insurance premiums paid by Intimate Fashions for the insurance of the leased premises. In connection with the rent payments, El Telar's obligation is reduced by reason of the fact the building was sold before the agreed to expiration date, and is further reduced by reason of the partial settlement reached by Intimate Fashions with United Surety.

El Telar has refused and failed to make payment of the amounts claimed, which amounts are due and payable, although payment thereof was duly demanded by Intimate Fashions prior to the filing of this action. Therefore, El Telar is responsible for the payment of interest over the claimed amounts from the time the became due until total satisfaction and payment thereof.

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 14

## CONCLUSION

In view of the foregoing, the Complaint filed by plaintiff counter-defendant Intimate Fashions, Inc. is hereby **GRANTED** and it is hereby **ORDERED and DECREED** that plaintiff counter-defendant Intimate Fashions, Inc. shall recover from defendant-counterclaimant El Telar, Inc. the following amounts:

(a) the principal amount of **$43,791.30** for rent due, in addition to interest thereon at the applicable rate computed from July, 2005, until total payment and satisfaction thereof;

(b) the principal amount of **$5,470.00** for the insurance premiums paid, in addition to interest thereon at the applicable rate computed from July, 2005, until total payment and satisfaction thereof;

(c) the principal amount of **$67,254.58** for the property taxes corresponding to the term during which El Telar occupied the building, in addition to interest thereon at the applicable rate computed from May 17, 2005, until total payment and satisfaction thereof; and

(d) the costs of the proceedings and the amount of $15,000, as requested in the Complaint, for attorneys' fees.

The present action is DISMISSED WITH PREJUDICE as to unknown insurers identified in the Complaint as XYZ Insurance Companies.

Judgement is to be entered accordingly.

Intimate Fashion, Inc. v. El Telar, Inc., et al
Civil No. 06-1204 (JAG/CVR)
Opinion and Order
Page No. 15

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 5th day of August of 2009.

                  s/**CAMILLE L. VELEZ-RIVE**
                  **CAMILLE L. VELEZ-RIVE**
                  **UNITED STATES MAGISTRATE JUDGE**